Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/03/2017 09:08 AM CST

In re Interest of Noah B. et al., children under
18 years of age.
State of Nebraska, appellant, v. Griel B.
and Michaela B., appellees.

___ N.W.2d ___

Filed February 3, 2017.    No. S-16-031.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Motions to Dismiss: Rules of the Supreme Court: Pleadings: Appeal and Error.** The trial court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.
3. **Judgments: Res Judicata: Collateral Estoppel: Appeal and Error.** The applicability of claim and issue preclusion is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues preserved for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter.
5. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), there are three types of final orders which may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.
6. ____: ____. Numerous factors determine when an order affects a substantial right for purposes of appeal. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue. It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

7. **Final Orders.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.

8. **Juvenile Courts: Minors.** The State's right in juvenile proceedings is derived from its parens patriae interest, and it is pursuant to that interest that the State has enacted the Nebraska Juvenile Code.

9. ____: ____. The State has a right to protect the welfare of its resident children.

10. **Final Orders: Jurisdiction.** An order dismissing a supplemental petition in its entirety with no leave to amend is a final order when it prevents the State from pursuing adjudication and disposition on additional grounds.

11. **Judgments: Jurisdiction: Res Judicata.** Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

12. **Res Judicata.** The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.

13. ____. The doctrine of claim preclusion rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause.

14. **Judgments: Collateral Estoppel.** Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

15. **Res Judicata: Collateral Estoppel.** Whether the doctrine of either claim preclusion or issue preclusion applies in any given case is necessarily fact dependent.

16. **Motions to Dismiss: Rules of the Supreme Court: Pleadings.** Because a motion pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss.

17. **Rules of the Supreme Court: Pleadings.** Dismissal under Neb. Ct. R. Pldg. § 6-1112(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

18. **Motions to Dismiss: Summary Judgment: Pleadings.** If, on a motion to dismiss for failure to state a claim, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and the parties must be given reasonable opportunity to present all material made pertinent to such a motion.

19. **Judicial Notice: Motions to Dismiss: Rules of the Supreme Court: Summary Judgment: Pleadings.** A court may take judicial notice of matters of public record without converting a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6) into a motion for summary judgment.

20. **Res Judicata: Motions to Dismiss: Rules of the Supreme Court: Pleadings.** As a general proposition, it will be a rare case where the face of a pleading contains the facts necessary to permit a court to determine the applicability of claim preclusion on a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6).

21. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

22. **Juvenile Courts: Res Judicata.** The doctrine of claim preclusion cannot settle a question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time.

23. ____: ____. The policies of finality and judicial efficiency advanced by the doctrine of claim preclusion must, when necessary, give way when strict application of the doctrine would frustrate the central goal of protecting the welfare of children.

24. ____: ____. The doctrine of claim preclusion should not be strictly applied in abuse and neglect cases when doing so would fail to protect children from continuing abuse or neglect.

25. **Juvenile Courts: Jurisdiction: Res Judicata.** The best interests of Nebraska's children cannot be protected by a technical application of claim preclusion that bars the State from filing a supplemental petition seeking to adjudicate continuing allegations of abuse and neglect, simply because the State knew about such allegations previously and did not initially seek adjudication on that basis.

26. ____: ____: ____. The State does not have unfettered authority to adjudicate abuse and neglect allegations in a piecemeal fashion, free from the constraints of claim preclusion. Claim preclusion applies in abuse and neglect cases, but when a supplemental petition seeks adjudication on grounds not alleged in a prior adjudication, claim preclusion will not limit the proof to only facts or evidence that was not considered in, or which came into being after, the prior adjudication proceeding.

27. **Juvenile Courts: Jurisdiction: Res Judicata: Evidence: Proof.** If, in a supplemental petition, the State relies solely on evidence known at the time of a prior adjudication, the doctrine of claim preclusion will apply and bar the State from proceeding. If, however, the State relies on evidence from the time period after the prior adjudication to prove the allegations of the supplemental petition, the doctrine of claim preclusion will not bar the proof, even if the new evidence is used in conjunction with evidence known at the time of the prior adjudication.

28. **Juvenile Courts.** The welfare of Nebraska's children demands that courts place greater emphasis on protecting them from continuing abuse and neglect than on strict application of a judicial policy designed to reduce repeat litigation.

Appeal from the Separate Juvenile Court of Douglas County: Wadie Thomas, Judge. Vacated and remanded for further proceedings.

Donald W. Kleine, Douglas County Attorney, Patrick McGee, Anthony Hernandez, and Megan Furey, Senior Certified Law Student, for appellant.

Thomas C. Riley, Douglas County Public Defender, and Matthias J. Kraemer for appellee Griel B.

Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellee Michaela B.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

The primary question presented in this appeal is how the doctrines of claim preclusion and issue preclusion apply in an abuse and neglect proceeding when the State seeks to assert supplemental grounds for adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013). On this record, we conclude the juvenile court erred when it dismissed the State's supplemental petition, finding it was barred by claim and issue preclusion. We vacate the order of dismissal and remand the matter for further proceedings.

## BACKGROUND

### Original Petition Alleging
### Physical Abuse

Griel B. and Michaela B. are the biological parents of Noah B., Cheyenne B., and Ciara B. Noah was born in 1998, Cheyenne was born in 1999, and Ciara was born in 2001.

On March 17, 2014, the State filed a petition alleging the children came within the meaning of § 43-247(3)(a), in that Griel subjected them to inappropriate physical contact and Michaela failed to protect them from inappropriate physical contact. On the same date, the State filed an ex parte motion for temporary custody of the children. The motion was granted.

On May 30, 2014, the Nebraska Department of Health and Human Services filed an ex parte motion to suspend contact between the parents and children. An affidavit attached to the motion alleged that both Cheyenne and Ciara had made sexual abuse allegations against Griel during forensic interviews. At the hearing on the motion, a caseworker testified that both Cheyenne and Ciara had reported being sexually abused by Griel. In an order entered July 2, the court granted the motion and suspended Griel's contact with all the children.

The matter proceeded to adjudication on the original petition alleging physical abuse; the State did not seek leave to amend the petition to add sexual abuse as a factual basis for adjudication under § 43-247(3)(a). The adjudication hearing took place over a 3-day period. Noah and Cheyenne both testified, but Ciara did not. The record shows Ciara is a child with cognitive disabilities resulting from a stroke or head injury.

Noah testified that he and his sisters had been physically and emotionally abused by Griel. Cheyenne also testified that she and her siblings had been physically abused by Griel, and in addition, she testified that Griel had sexually abused her on multiple occasions before she was removed from the family home. The first day of trial recessed with Cheyenne on the witness stand.

When cross-examination resumed 2 weeks later, Cheyenne recanted her earlier testimony. On redirect, Cheyenne admitted she had talked with her parents the previous evening, and further admitted she wanted to go back home with them. Cheyenne was asked, "Do you think that coming in today and saying these allegations didn't happen will get you to go home?" She replied, "I don't know." The State attempted to show that she had changed her testimony after having unsupervised contact with her parents in violation of a court order. Specifically, the State questioned Michaela regarding contact with Cheyenne the night before trial, but Michaela objected to the questioning on Fifth Amendment grounds. The court sustained the objection, reasoning that "she has a qualified right to remain silent as to anything that might tend to show she committed a crime [and w]itness tampering is a crime."

After the State rested its case, neither Griel nor Michaela presented evidence. The State focused its closing argument on the evidence adduced regarding allegations of physical abuse, and argued it had proved such allegations. The juvenile court found all three children were within the meaning of § 43-247(3)(a) as to both parents due to physical abuse. In its written order, the court made no specific findings regarding sexual abuse, but found Cheyenne was "not a credible witness" and stated it gave "no credence" to her testimony. All three children were placed in the custody of the Department of Health and Human Services and ordered to be placed outside the home. No appeal was taken from this adjudication.

The dispositional order articulated a permanency objective of reunification with a concurrent plan of guardianship. The court also adopted a case plan which included supervised visitation, family therapy, and a requirement that Griel and Michaela complete a parenting assessment. In the months after the adjudication, Cheyenne and Ciara continued to tell providers and others that Griel had sexually abused them before they were removed from the family home.

### Supplemental Petition
### Alleging Sexual Abuse

On November 4, 2015, the State filed a supplemental petition alleging all three children were within the meaning of § 43-247(3)(a), because Griel had subjected one or more of them to inappropriate sexual contact and Michaela had failed to protect them from such contact. The supplemental petition did not allege specific dates or timeframes regarding the alleged sexual abuse.

The State also filed a notice of intent to present hearsay testimony.[1] This notice identified some of the evidence the State intended to offer in support of its supplemental petition. That evidence included recent statements made by Ciara to several persons involved in her care reporting that Griel touched her inappropriately before the children were removed from the home. The evidence also included recent statements made by Cheyenne to her foster parent and her psychiatrist reporting that Griel sexually abused her and Ciara before the girls were removed from the family home. Summarized, the State's notice showed it intended to offer hearsay statements which were made after the original adjudication but which related to incidents of sexual abuse that occurred before the adjudication and before the children were removed from the home.

### Motion to Dismiss

Griel moved to dismiss the supplemental petition pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) (rule 12(b)(6)), alleging it failed to state a claim upon which relief could be granted, because the allegations raised therein were, or could have been, litigated in the prior adjudication and were barred by the doctrines of claim preclusion and issue preclusion. Alternatively, Griel moved to strike the supplemental petition. Michaela filed similar motions.

---

[1] See Neb. Rev. Stat. § 27-803(7) (Reissue 2016).

At the hearing on the parents' motions, all parties referred extensively to the record and the prior proceedings, but offered no evidence. Griel and Michaela argued the supplemental petition was barred by claim and issue preclusion, because the allegations of sexual abuse were known to all the parties before the initial adjudication hearing and some evidence of sexual abuse was adduced from Cheyenne during the first adjudication hearing.

The State opposed the motions to dismiss on several grounds. First, it argued that even under a traditional application of claim preclusion, the issue of sexual abuse was not alleged or tried on the merits in the first adjudication, particularly as regards Ciara, who did not testify. The State acknowledged testimony of sexual abuse had been elicited from Cheyenne during the first adjudication hearing, but argued that the court made no findings regarding sexual abuse and there were no dispositional orders entered addressing sexual abuse.

The State's primary argument was that the doctrines of claim and issue preclusion apply differently "in matters concerning the best interest of children." The State relied on the cases of *In re Interest of V.B. and Z.B.*[2] and *In re Interest of Marcus W. et al.*[3] for the proposition that claim and issue preclusion cannot settle the question of a child's welfare for all time to come. The State argued that when a supplemental petition is filed, claim preclusion does not limit the proof to only facts or evidence which was not considered in, or which came into being after, the first adjudication. The State argued that after the first adjudication hearing, additional evidence of prior sexual abuse was discovered and prompted the State to conclude it was in the children's best interests to seek additional

---

[2] *In re Interest of V.B. and Z.B.*, 220 Neb. 369, 370 N.W.2d 119 (1985).

[3] *In re Interest of Marcus W. et al.*, 11 Neb. App. 313, 649 N.W.2d 899 (2002).

grounds for adjudication. The State advised the court that in addition to the recent disclosures of sexual abuse contained in the State's notice of intent to present hearsay statements, there was evidence that after the initial adjudication, Griel asked Cheyenne during a visit whether she "would still have a desire" to have sexual contact with him and Ciara reported being afraid that once visits were no longer supervised, Griel would subject her to more sexual contact. The State argued that "all of these disclosures, in combination, present sufficient evidence to now move forward with an adjudication as to inappropriate sexual contact." The State concluded by arguing, "There [is] a need for new dispositional orders, as witnesses would testify that the children have been acting out due to sexual abuse and it would be in the best interest of the children not to bar this proceeding."

The trial court took judicial notice of several prior pleadings and orders, and also indicated it "kind of remember[ed]" some of the testimony from the first adjudication and Cheyenne's recanting of her testimony. Briefing was requested, and the matter was taken under advisement.

In an order entered December 10, 2015, the court granted the parents' motions and dismissed the State's supplemental petition in its entirety, finding it was barred by the doctrines of claim and issue preclusion. The State timely appealed, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[4]

## ASSIGNMENTS OF ERROR

The State assigns, restated and consolidated, that the juvenile court erred in dismissing the supplemental petition on the bases of claim preclusion and issue preclusion.

---

[4] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.[5]

[2] The trial court's grant of a motion to dismiss for failure to state a claim under rule 12(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[6]

[3] The applicability of claim and issue preclusion is a question of law.[7] On a question of law, an appellate court reaches a conclusion independent of the court below.[8]

## ANALYSIS

We begin by noting that in the past, claim preclusion and issue preclusion were referred to as res judicata and collateral estoppel, respectively.[9] We have expressed a preference for using the modern terminology,[10] and we therefore use the terms "claim preclusion" and "issue preclusion" in our analysis of the issues presented.

### Final Order

[4] In a juvenile case, as in any other appeal, before reaching the legal issues preserved for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter.[11] Griel and Michaela contend we lack jurisdiction to decide this case, because the order dismissing the supplemental petition was not a final, appealable order.

---

[5] *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

[6] *In re Adoption of Kenten H.*, 272 Neb. 846, 725 N.W.2d 548 (2007).

[7] *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[8] *Id.*

[9] *Id.*

[10] See *id.*

[11] *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015).

[5] Our jurisdiction to review the juvenile court's December 10, 2015, order depends on whether it is a final order.[12] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), there are three types of final orders which may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.[13] The first and third categories of final order are not implicated here. But a proceeding before a juvenile court is a special proceeding for appellate purposes,[14] so we must determine whether the order dismissing the State's supplemental petition affected a substantial right.

[6,7] Numerous factors determine when an order affects a substantial right for purposes of appeal. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue.[15] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[16] Whether the effect of an order is substantial depends on """"whether it affects with finality the rights of the parties in the subject matter."""[17]

[8,9] The State's right in juvenile proceedings is derived from its parens patriae interest,[18] and it is pursuant to that interest that the State has enacted the Nebraska Juvenile Code.[19] The State has a right to protect the welfare of its resident

---

[12] See Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016).

[13] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012); *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011).

[14] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

[15] *Deines v. Essex Corp.*, 293 Neb. 577, 879 N.W.2d 30 (2016).

[16] *Id.*

[17] *Id.* at 581, 879 N.W.2d at 33.

[18] *In re Interest of Karlie D., supra* note 13.

[19] *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

children,[20] and we have observed that "[o]ne would be hard pressed to cite a governmental interest of greater import."[21] This right is especially prominent in juvenile adjudications, because the purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child.[22]

[10] The December 10, 2015, order dismissed the supplemental petition in its entirety with no leave to amend, thus foreclosing the State from pursuing adjudication and disposition on grounds of sexual abuse, and preventing the State from seeking to protect the children from such abuse. We conclude, on these facts, that the order of dismissal affected a substantial right of the State and is a final, appealable order. We proceed to consideration of the merits.

### Dismissal of Supplemental Petition

[11-13] The juvenile court dismissed the supplemental petition, finding it was barred by the doctrines of claim preclusion and issue preclusion. Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[23] The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.[24] The doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause.[25]

---

[20] *In re Interest of Karlie D., supra* note 13.

[21] *In re Interest of R.G., supra* note 19, 238 Neb. at 418, 470 N.W.2d at 790.

[22] *In re Interest of Karlie D., supra* note 13.

[23] *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

[24] *Id.*

[25] *Id.*

[14] Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[26]

[15-19] Whether either preclusion doctrine applies in any given case is necessarily fact dependent. In this case, Griel and Michaela raised the applicability of claim and issue preclusion via motions to dismiss under rule 12(b)(6). Because a rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss.[27] Dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.[28] If, on a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court,"[29] the motion shall be treated as one for summary judgment and the parties must be given reasonable opportunity to present all material made pertinent to such a motion.[30] However, a court may take judicial notice of matters of public record without converting a rule 12(b)(6) motion to dismiss into a motion for summary judgment.[31]

[20] As a general proposition, it will be a rare case where the face of a pleading contains the facts necessary to permit a court to determine the applicability of claim preclusion on a

---

[26] *Hara v. Reichert, supra* note 7.

[27] *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

[28] *Id.*

[29] Neb. Ct. R. Pldg. § 6-1112(b).

[30] See *DMK Biodiesel v. McCoy, supra* note 27. See, also, *In re Adoption of Kenten H., supra* note 6.

[31] *Id.*

motion to dismiss under rule 12(b)(6).[32] This is not that case. The supplemental petition did not allege specific dates or timeframes regarding the alleged sexual abuse, and made no reference to the earlier adjudication proceedings. On its face, it contained no facts relevant to the preclusion analysis.

The juvenile court took judicial notice of certain prior filings in the case, and we have said that when such filings are matters of public record, they can be judicially noticed without converting a motion to dismiss into a motion for summary judgment.[33] However, our review of the record shows that the court considered facts and evidence beyond any matters of public record which it judicially noticed.

As noted, the State presented to the court a notice of intent to offer hearsay evidence and, in doing so, argued as a matter of fact that both Cheyenne and Ciara had made disclosures of sexual abuse after the original adjudication. The State also informed the court it had additional evidence related to statements made by Griel to Cheyenne during visitations and by Ciara after the original adjudication. None of these "facts" could properly be considered by the court in the context of deciding a motion to dismiss.

In its written order dismissing the supplemental petition, the court found that "the State as well as all other parties to this case were aware of the sexual abuse allegations involving the minor children . . . prior to the [first] adjudication in this matter." The court further found that in the first adjudication, "the State called the minor child, Cheyenne as a witness and after she extensively testified to the alleged sexual abuse by her father, Cheyenne inexplicably recanted and admitted that she had lied about the allegations of abuse including sexual abuse." And the court also made a finding that "the State certainly could have called the minor child, Ciara as a witness,

---

[32] See John P. Lenich, Nebraska Civil Procedure § 8:16 (2008) (applicability of claim preclusion can be raised in motion for summary judgment, and evidence should be offered to establish defense).

[33] *In re Adoption of Kenten H., supra* note 6.

but it made a tactical decision not to call her." It is not clear from the record what the court relied upon in making these findings. It is clear from our review of the record, however, that the court could not have found the parties were aware of the specific sexual abuse allegations the State sought to raise in the supplemental petition without looking at matters outside the pleadings and prior court records.

On the record before us, we conclude the juvenile court erred by not converting the motions to dismiss into motions for summary judgment and allowing both parties an opportunity to produce evidence supporting their arguments. We do not comment on whether the applicability of claim and issue preclusion could be determined under a summary judgment standard, but hold only that it was error here to consider matters beyond the pleading and matters of public record when ruling on the motion to dismiss. We therefore vacate the order of dismissal and remand the matter for further proceedings consistent with this opinion.

CLAIM PRECLUSION IN
CHILD WELFARE CASES

[21] An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[34] Because the issues raised in this appeal regarding the applicability of claim preclusion are likely to recur on remand, we take this opportunity to more fully explain how that doctrine applies in abuse and neglect cases such as this.

[22] We have considered claim preclusion in the context of successive child custody hearings,[35] successive commitment hearings in juvenile delinquency proceedings,[36] and successive parental termination proceedings.[37] In all such contexts, we

---

[34] *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013).

[35] *Marez v. Marez*, 217 Neb. 615, 350 N.W.2d 531 (1984).

[36] *In re Interest of Alan L., supra* note 23.

[37] *In re Interest of V.B. and Z.B., supra* note 2.

have cautioned that "'the doctrine of [claim preclusion] cannot settle a question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time.'"[38] This same caution applies in the context of successive adjudications in abuse and neglect cases.

Several other jurisdictions have examined how the doctrine of claim preclusion should be applied in child welfare cases.[39] In *People ex rel. L.S.*,[40] the South Dakota Supreme Court recognized the doctrine is premised on two maxims: (1) A person should not be twice vexed for the same cause, and (2) it is for the public good that there be an end to litigation. It also noted that claim preclusion seeks to promote judicial efficiency by preventing repetitive litigation over the same dispute.[41] The South Dakota court reasoned, however, that "it is important to consider the nature of abuse and neglect proceedings. The protection of children from continuing abuse and neglect is not the type of needless litigation contemplated by the doctrine."[42] It thus articulated that "when it comes to protecting children [claim preclusion] should be cautiously applied."[43] According to the South Dakota Supreme Court, a "hyper-technical application of [claim preclusion] is simply not appropriate" in child welfare cases.[44] This is so, because concern for children's

---

[38] *In re Interest of Alan L., supra* note 23, 294 Neb. at 279, 882 N.W.2d at 694. Accord *In re Interest of V.B. and Z.B., supra* note 2.

[39] See, e.g., *L.M. v. Shelby County Dept. of Human Res.*, 86 So. 3d 377 (Ala. Civ. App. 2011); *Kent v. Dept. of Health & Soc. Services*, 233 P.3d 597 (Alaska 2010); *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 460 A.2d 1277 (1983); *In re J'America B.*, 346 Ill. App. 3d 1034, 806 N.E.2d 292, 282 Ill. Dec. 317 (2004); *People ex rel. L.S.*, 721 N.W.2d 83 (S.D. 2006); *State in Interest of J.J.T.*, 877 P.2d 161 (Utah App. 1994).

[40] *People ex rel. L.S., supra* note 39.

[41] *Id.*

[42] *Id*. at 90.

[43] *Id.*

[44] *Id*. at 92.

welfare "demands that we place greater emphasis on their protection than on a judicial policy against repeat litigation. To hold otherwise is to turn our legal process for protecting abused and neglected children into a hollow ritual."[45]

Other courts have expressed similar caution about mechanically applying claim preclusion in child welfare cases. According to the Connecticut Supreme Court,

> [t]he judicial doctrines of [claim preclusion and issue preclusion] are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies.[46]

The Utah Court of Appeals has also expressed reluctance to apply claim preclusion in child welfare cases, stating:

> A . . . fundamental question . . . is whether the judicial doctrine of [claim preclusion] has any application in proceedings involving the welfare of children. Mindful of the unique nature of child custody and related proceedings, we share the concerns expressed by the courts which have recognized that a hyper-technical application of [claim preclusion] is improper in adjudications where the welfare of children is at stake. Considerations regarding a child's welfare are rarely, if ever, static. . . .
>
> . . . In one sense, each day a child is left in an unsafe or unhealthy environment represents a "new" basis for

---

[45] *Id.*

[46] *In re Juvenile Appeal (83-DE), supra* note 39, 190 Conn. at 318, 460 A.2d at 1282.

judicial concern, and it is this continued threat to a child's welfare that merits the court's continuing jurisdiction and periodic review. The best interests of a child usually cannot be determined from a single incident, or even a series of incidents considered in isolation. Rather, to effectively determine the best interests of a child, a court must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy.[47]

We find the concerns expressed by these courts to be compelling. And we note that Nebraska appellate courts have also limited the application of claim and issue preclusion in child welfare cases.

In *In re Interest of V.B. and Z.B.*,[48] the State attempted to terminate a couple's parental rights. After conducting an evidentiary hearing, the court found there was not sufficient evidence to terminate. About 1 year later, the State filed a supplemental petition and again sought to terminate the couple's parental rights. The couple argued the doctrine of claim preclusion barred the court from considering any evidence in support of the second petition that was adduced at the hearing on the first petition for termination. We noted that we had addressed a similar issue in a child custody case, and there reasoned:

"A custodial order is conclusive as to all matters prior to its promulgation. But the doctrine of [claim preclusion] cannot settle a question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time. The usual way of expressing this rule is to say that 'circumstances have changed' when the order is no longer in the children's interest."[49]

---

[47] *State in Interest of J.J.T., supra* note 39, 877 P.2d at 163-64.

[48] *In re Interest of V.B. and Z.B., supra* note 2.

[49] *Id*. at 372, 370 N.W.2d at 121, quoting *Marez v. Marez, supra* note 35.

In *In re Interest of V.B. and Z.B.*, we found this rationale applied to parental termination cases as well. We held that "[w]hen a second termination proceeding is not itself barred, the proof is not limited by [claim preclusion or issue preclusion] principles to facts or evidence which was not considered in, or which came into being after, the first proceeding."[50] We explained that in juvenile proceedings claim preclusion prevented a party in a second proceeding from relying solely on evidence it knew of at the time of the prior proceeding, but that it was proper to use the prior evidence in a second proceeding in conjunction with new evidence.[51] We recently held this same principle applies when the State files successive motions to change a juvenile's disposition in delinquency proceedings.[52]

The Nebraska Court of Appeals has also limited the application of claim preclusion in the context of a juvenile dependency proceeding that involved a successive motion to terminate parental rights.[53] In *In re Interest of Marcus W. et al.*,[54] the State unsuccessfully sought to terminate a mother's parental rights based on allegations that she substantially and continuously or repeatedly neglected her children and refused to provide them necessary care. Later, the State sought to terminate the mother's parental rights based on an allegation that she had a mental illness or deficiency that was expected to continue for a prolonged period of time. In finding the second action was not barred by the doctrine of claim preclusion, the court reasoned that even though evidence of the mother's mental capacity could have been presented in the first termination proceeding, the second termination petition alleged different operative facts, and thus, different proof was required. The

---

[50] *Id*. at 372, 370 N.W.2d at 122.

[51] *Id*.

[52] See *In re Interest of Alan L., supra* note 23.

[53] See *In re Interest of Marcus W. et al., supra* note 3.

[54] *Id*.

court reasoned that because different grounds for termination were asserted in the second motion, claim preclusion could not bar the successive proceeding.

[23] These cases illustrate that in child welfare cases, Nebraska appellate courts have not strictly applied claim preclusion. Instead, both this court and the Court of Appeals have implicitly recognized that the policies of finality and judicial efficiency advanced by the doctrine of claim preclusion must, when necessary, give way when strict application of the doctrine would frustrate the central goal of protecting the welfare of children. Supplemental petitions seeking adjudication and disposition on additional grounds present such a circumstance.

[24,25] We now expressly hold that the doctrine of claim preclusion should not be strictly applied in abuse and neglect cases when doing so would fail to protect children from continuing abuse or neglect. The best interests of Nebraska's children cannot be protected by a technical application of claim preclusion that bars the State from filing a supplemental petition seeking to adjudicate continuing allegations of abuse and neglect, simply because the State knew about such allegations previously and did not initially seek adjudication on that basis.

[26-28] In so holding, we caution that the State does not have unfettered authority to adjudicate abuse and neglect allegations in a piecemeal fashion, free from the constraints of claim preclusion. Claim preclusion applies in abuse and neglect cases, but when a supplemental petition seeks adjudication on grounds not alleged in a prior adjudication, claim preclusion will not limit the proof to only facts or evidence that was not considered in, or which came into being after, the prior adjudication proceeding.[55] Rather, the applicability of claim preclusion will turn on the nature of the proof being offered. If the State relies solely on evidence known at the time of the prior

---

[55] See, generally, *In re Interest of V.B. and Z.B., supra* note 2.

adjudication, the doctrine of claim preclusion will apply and bar the State from proceeding.[56] If, however, the State relies on evidence from the time period after the prior adjudication to prove the allegations of the supplemental petition, the doctrine of claim preclusion will not bar the proof, even if the new evidence is used in conjunction with evidence known at the time of the prior adjudication.[57] Simply put, the welfare of Nebraska's children demands that we place greater emphasis on protecting them from continuing abuse and neglect than on strict application of a judicial policy designed to reduce repeat litigation.

This modified application of claim preclusion is consistent with how we have applied the doctrine in successive child custody hearings,[58] successive commitment hearings in juvenile delinquency proceedings,[59] and successive parental termination proceedings.[60] And modifying application of the doctrine in this fashion is appropriate abuse and neglect cases, because "'the doctrine of [claim preclusion] cannot settle a question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time.'"[61]

## CONCLUSION

For the foregoing reasons, we vacate the order of dismissal and remand the matter for further proceedings on the supplemental petition.

VACATED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[56] *Id.*

[57] *Id.*

[58] *Marez v. Marez, supra* note 35.

[59] *In re Interest of Alan L., supra* note 23.

[60] *In re Interest of V.B. and Z.B., supra* note 2.

[61] *In re Interest of Alan L., supra* note 23, 294 Neb. at 279, 882 N.W.2d at 694. Accord *In re Interest of V.B. and Z.B., supra* note 2.