IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE GUARDIANSHIP & CONSERVATORSHIP OF HUNT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE GUARDIANSHIP AND CONSERVATORSHIP OF DOROTHY J. HUNT,
AN INCAPACITATED AND PROTECTED PERSON.

KAREN J. ANTHONY, INTERESTED PARTY, APPELLANT,

V.

BERNICE L. PFINGSTEN AND RANDALL S. HUNT, COGUARDIANS,
AND PINNACLE BANK, CONSERVATOR, APPELLEES.


Filed October 24, 2017.    No. A-16-1044.


Appeal from the County Court for Gage County: STEVEN B. TIMM, Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Jeffrey A. Gaertig, of Smith, Schafer, Davis & Gaertig, L.L.C., for appellees Bernice L. Pfingsten and Randall S. Hunt.

Andrew K. Carothers, of Willet & Carothers, for appellee Pinnacle Bank.


INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Dorothy J. Hunt's sister, Bernice L. Pfingsten, filed a petition asking the court to appoint a guardian and conservator for Dorothy. Dorothy's daughter, Karen J. Anthony, objected to the petition. The Gage County Court found that Dorothy was in need of a guardian and conservator and appointed Pfingsten and Dorothy's son, Randall S. Hunt, as coguardians and Pinnacle Bank as conservator. Anthony appeals. Finding no merit to the arguments raised on appeal, we affirm.

- 1 -

BACKGROUND

On January 23, 2015, Pfingsten filed a petition for appointment of temporary and permanent guardian and conservator for Dorothy. Pfingsten sought the appointment of Randall and herself as temporary and permanent coguardians. She also requested that Pinnacle Bank be appointed as temporary and permanent conservator for Dorothy's property and property affairs. Anthony filed a notice of objection to the petition, asserting that Dorothy had signed a power of attorney in December 2014 which appointed Anthony as attorney-in-fact for Dorothy, and through it, Anthony was able to properly care for Dorothy. Anthony therefore requested that the court dismiss the petition. The court appointed Pfingsten and Randall as temporary coguardians and Pinnacle Bank as temporary conservator.

A trial was held on November 13, 2015, during which the court was to determine whether Dorothy was incapacitated and in need of a permanent guardian and conservator as well as who should be appointed guardian and conservator. During opening statements, Dorothy's counsel did not contest the need for a guardian and conservator, and Anthony's counsel indicated that the evidence would show that Anthony was best suited to be appointed guardian.

At the time of trial, Dorothy was 91 years old and suffered from hypertension, type 2 diabetes, macular degeneration with functional blindness, hypercholesterolemia, and progressive cognitive impairment. The evidence was virtually undisputed that Dorothy was no longer able to make appropriate decisions regarding her person and property on her own.

Dr. David Gloor who had been Dorothy's primary physician for over 30 years authored a letter in December 2014 which was received into evidence. In it, he reported that Pfingsten had been instrumental in assisting Dorothy, whereas Anthony had become increasingly involved, and although she may be well-intentioned, the changes she attempted to implement with respect to Dorothy's medical conditions could have a significant deleterious effect on Dorothy's health. These changes included purchasing numerous vitamins and supplements for Dorothy to take, unilaterally adjusting Dorothy's insulin and instructing Dorothy to discontinue her diabetic and blood pressure medications, and purchasing an oxygen concentrator for Dorothy to use in an attempt to correct her vision. In addition, Dr. Gloor noted that Anthony has a strong opinion that Dorothy's medical problems are a result of her diet, an opinion with which Dr. Gloor disagreed.

Dr. Gloor authored a second letter in March 2015 reporting that Dorothy had recently moved to an assisted living facility, which afforded much better management of her medical care. The letter stated that Dorothy's cognitive decline had significantly impaired her ability to manage her own affairs, and Pfingsten had been instrumental in assisting her. Dr. Gloor opined in the letter that Pfingsten and Randall have and would continue to act in Dorothy's best interests, and he would support their request for guardianship. At trial, Dr. Gloor testified that he was familiar with both Pfingsten and Anthony because they had each accompanied Dorothy to appointments at various times. He explained that there had been occasions where Anthony would take action contrary to his medical advice or recommendations but not Pfingsten.

In April 2015, Dr. Lee Zlomke, a licensed psychologist, performed a psychological assessment of Dorothy in order to determine whether she was in need of a guardian. The evaluation revealed that Dorothy's general cognitive abilities fell within the significant likelihood of functional dementia. Specifically, Dr. Zlomke determined that Dorothy's ability to conceptualize,

organize, and synthesize complex information in order to help make decisions and effective plans of action was significantly diminished, she had a deteriorated ability to recall pertinent information beyond a few minutes past presentation and a deteriorated ability to think abstractly such as forming hypothetical options and using cognitive processing to draw conclusions about future plans of action, and she had an impaired ability to examine likely scenarios and cognitively process through alternative actions to assist in decision-making.

Dr. Zlomke concluded that Dorothy's cognitive abilities were significantly diminished due to age-related cognitive decline and impeded her capacity to care for her personal safety and to attend to and provide for her basic necessities such as food, shelter, clothing, finances beyond personal spending money, and medical treatments. She therefore lacks the sufficient complex executive functioning capacities to make reasoned informed major decisions and consistently report her desires.

Dorothy underwent a neuropsychological evaluation with Dr. Robert Arias in July 2015. Dr. Arias determined that Dorothy has severe impairments in memory retention for verbal information as well as mild impairments in verbal and visual attention, abstract thinking, and social problem solving. He noted that Dorothy indicated that she feels confused at times about matters, and she was of the opinion that she was unable to manage her finances independently. Given her cognitive difficulties, Dr. Arias therefore considered Dorothy to be a vulnerable individual from a financial standpoint. And although he opined that she was able to contribute to some extent to decision making, he believed that she did not possess the full mental capacity to independently make, communicate, and carry out responsible decisions regarding person and property. Her prognosis for improvement was guarded given the likelihood that her deficits will either remain as they are now or gradually progress. Accordingly, Dr. Arias recommended maintaining a legal guardian and conservator on a permanent basis.

The record is also replete with evidence of the discord between Pfingsten and Randall on one hand and Anthony on the other with respect to Dorothy's best interests. Pfingsten and Randall admitted that they do not have a good relationship with Anthony, and Anthony admitted the same. Dr. Zlomke's report repeatedly references the strong differences of opinion as to Dorothy's best interests held by her family members. Likewise, Dr. Arias noted that there is obviously discord between the involved family members, and Dorothy told him that the family discord is stressful for her.

Pfingsten testified that she resides in Beatrice, Nebraska, the same town as Dorothy, and she communicates periodically with Randall, who resides in Colorado. Pfingsten believed that she and Randall would work well together because they generally agree on how to care for and attend to Dorothy. Pfingsten also testified that she has a good professional relationship with the trustee at Pinnacle Bank. Similarly, Randall testified that despite his distance, he is willing to serve as permanent coguardian with Pfingsten, and they get along well. They both indicated that they would trust the services in place for Dorothy and the medical providers that care for her.

Anthony resides in Lincoln, Nebraska. When asked whether she thought Dorothy needed a guardian, she replied that she thinks Dorothy needs help, but did not believe that Dorothy needed the court to be involved. Anthony explained her attempts at managing Dorothy's medical conditions, describing that she purchased an oxygen concentrator for Dorothy based on an internet article about a study that indicated that a lack of oxygen leads to mental deterioration of older

people, and increased oxygen may lead to improvement in vision. She did not believe that Dr. Gloor was correct when he opined that such treatment could have a deleterious effect on Dorothy. If Anthony were appointed guardian, she said she would be happy to work with Dr. Gloor, but she stopped short of agreeing that she would follow his advice and recommendations.

There were also concerns raised about Anthony's finances. At one point, she requested reimbursement from Dorothy's bank account for over $500 in vitamins and supplements she purchased on behalf of Dorothy. She made a second request for reimbursement, but that request was not honored because Randall objected to its necessity. In addition, Anthony had filed bankruptcy in August 2011, and at the time of trial, the bank was attempting to complete a foreclosure of her home.

The trust officer at Pinnacle Bank testified that he knows Dorothy because she has been a long-time customer of the bank and is the beneficiary of a family trust of which the bank is the cotrustee. Pinnacle Bank was willing to serve as permanent conservator for Dorothy.

The bank agreed to be the temporary conservator and had taken control of Dorothy's bank account and used those funds from time to time for her care such as expenses at the assisted living facility. There are two main assets at issue with respect to the conservatorship: a checking account and a monthly Social Security benefit.

In an order dated January 21, 2016, the county court found upon clear and convincing evidence that Dorothy was an incapacitated person lacking sufficient understanding to make or communicate reasonable decisions concerning her person and was therefore in need of a permanent guardian. Likewise, the court concluded that the clear and convincing evidence established that Dorothy was unable to manage her property effectively because of mental and physical illness, and therefore, a conservator was necessary. In reaching the conclusion that Dorothy was in need of a guardian and conservator, the court relied upon the opinions of Drs. Gloor, Zlomke, and Arias to find that Dorothy was unable to manage her person or property.

The court further decided that Dorothy's interests could not be protected by the power of attorney in favor of Anthony because of the serious discord and animosity between Anthony and Pfingsten. Thus, managing Dorothy's affairs by means of the general durable power of attorney would not in her best interests, but rather, the appointment of a guardian and conservator is the least restrictive alternative available to care for Dorothy's person and property.

The court recognized that Pfingsten and Randall were not seeking control of Dorothy's finances and had nominated Pinnacle Bank to serve as conservator. Similarly, Anthony was not seeking appointment as conservator because she did not believe a conservator was necessary. The court observed that Pinnacle Bank was already acting as cotrustee for Dorothy's family trust, and Dorothy expressed confidence in the bank's ability to handle her finances. Accordingly, Pinnacle Bank was appointed as conservator for Dorothy.

In addition, the court appointed Pfingsten and Randall as coguardians for Dorothy. In doing so, the court recognized that Anthony was generally skeptical of the medical profession and disagreed with Dr. Gloor on various issues. She testified that she would remove Dorothy from the assisted living facility where she resides even though Drs. Gloor and Arias believed that remaining there was in Dorothy's best interests. Further, the court observed that Anthony was openly hostile to Pinnacle Bank and its trust officer, offered evasive testimony at trial, was resistant to judicial

oversight, and was ambivalent about complying with court orders. Thus, the court found that Anthony would be a reluctant guardian at best.

On the other hand, the court noted that Pfingsten and Randall readily submitted to the court's jurisdiction, generally agreed with the advice of Dorothy's medical providers, and Randall resigned as trustee of the family trust in favor of Pinnacle Bank. The court recognized that conflict between an incapacitated person's guardian and conservator, between the guardian and caregiver, and between the guardian and ward's physician was clearly contrary to the best interests of the ward, and in this case, was avoidable. The court therefore concluded that Dorothy's best interests would be served by the appointment of Pfingsten and Randall as coguardians.

After holding a subsequent hearing, the court found, in a June 16, 2016 order, that the attorney fees and expenses requested by counsel for Pfingsten and Randall were fair and reasonable and that the total amount of $21,932.51 should be paid by Dorothy's family trust.

On September 16, 2016, Pfingsten and Randall filed an acceptance of appointment of guardian form, and Pinnacle Bank filed an acceptance of appointment of conservator form. On October 4, 2016, the county court issued the letters of guardianship and conservatorship formally appointing Pfingsten and Randall as coguardians and Pinnacle Bank as conservator for Dorothy. Anthony filed her notice of appeal on November 3, 2016.

## ASSIGNMENTS OF ERROR

Anthony assigns, consolidated and restated, that the county court erred in (1) determining that the appointment of a guardian and conservator was necessary, (2) appointing Pfingsten and Randall as coguardians rather than Anthony or a disinterested third party, (3) appointing Pinnacle Bank as conservator rather than Anthony, (4) charging the attorney fees incurred by Pfingsten and Randall to Dorothy's estate, and (5) belatedly issuing letters to the appointees.

## STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009). When reviewing a judgment for error appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

When attorneys' fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling will not be disturbed on appeal unless the court abused its discretion. *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

## ANALYSIS

*Jurisdiction.*

At the outset, Pfingsten, Randall, and Pinnacle Bank argue that this court lacks jurisdiction over the appeal because the issuance of the letters of guardianship and conservatorship was a ministerial function which did not affect a substantial right of the parties. Thus, they argue that the January 21, 2016 order was a final appealable order as was the June 16, 2016 order addressing attorney fees. We disagree and conclude that the notice of appeal was timely filed, and we therefore have jurisdiction.

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). This court has jurisdiction over final orders that are appealed within 30 days from their entry. See Neb. Rev. Stat. § 25-1912 (Reissue 2016).

The notice of appeal in this case was filed on November 3, 2016. Because the order appointing a guardian and conservator, entered January 21, and the order disposing of the attorney fee request, entered June 16, were filed more than 30 days prior to that, we must determine whether they were final orders at the time of entry, or whether the letters of guardianship and conservatorship issued October 4, 2016 were final orders from which Anthony could appeal.

Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *In re Guardianship & Conservatorship of Forster, supra.*

The requests for appointment of a guardian and conservator were made pursuant to the Nebraska Probate Code, and proceedings under the Nebraska Probate Code are special proceedings within the meaning of § 25-1902. See *In re Guardianship & Conservatorship of Forster, supra*. See, also, *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006) (proceedings initiated to appoint guardian and conservator are special proceedings). Thus, we must determine whether a substantial right was affected when the court entered the order appointing a guardian and conservator or when the letters finalizing the appointments were issued.

A substantial right is an essential right, not a mere technical right. *In re Guardianship & Conservatorship of Forster, supra*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *Id*. If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case. *Id*.

Numerous factors determine when an order affects a substantial right for purposes of appeal. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue. *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017). It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial. *Id*. Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter. *Id*.

We conclude that the January 21, 2016, order appointing the guardian and conservator did not affect a substantial right, because the appointment of the coguardians and conservator did not take effect until the letters of appointment were issued. The court's order specifically stated that: "Randall S. Hunt & Bernice L. Pfingsten shall be appointed guardian(s) of Dorothy J. Hunt upon Letters of Guardianship being issued to the guardian(s)" which would occur after the filing of certain documents with the court and sending the appropriate forms to all interested parties. The order with respect to the appointment of Pinnacle Bank as conservator contained similar language.

In a limited guardianship, the powers shall be endorsed upon the letters of appointment of the guardian and shall be treated as specific limitations upon the general powers, rights, and duties accorded by law to the guardian, and in a full guardianship, the letters of appointment shall specify

that the guardian is granted all powers conferred upon guardians by law. Neb. Rev. Stat. § 30-2620(b) (Reissue 2016). Thus, it is the letters of appointment that authorize a guardian to act on behalf of the ward, and not merely the court order appointing a guardian.

Further, an order from the county court in July 2016 made clear the court's view of the status of the guardianship when it referred to Pfingsten and Randall as the "temporary guardians" and indicated that their counsel reported that the requirements for appointment of permanent guardians and conservator were not yet complete. Accordingly, the court continued the matter for 30 days to allow for completion of the requirements for permanent appointment of the guardians and conservator. As a result, at that point, the appointment of the guardians and conservator had not yet been finalized. Additionally, Pfingsten, Randall, and Pinnacle Bank did not file their acceptance of appointment of guardian or conservator until September 2016. Accordingly, a substantial right was not affected until the requirements were completed and the letters issued in October 2016. Therefore, the appeal in the instant case is timely, and we have jurisdiction over this matter.

*Necessity of Guardian and Conservator.*

Anthony asserts that the county court erred in finding that Dorothy was in need of a guardian and conservator. She claims that Dorothy's interests could be properly protected via the power of attorney appointing her as Dorothy's attorney-in-fact. We disagree.

The court may appoint a guardian if it is satisfied by clear and convincing evidence that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of the person of the person alleged to be incapacitated. Neb. Rev. Stat. § 30-2620 (Reissue 2016). Incapacitated person means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent that the person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning himself or herself. Neb. Rev. Stat. § 30-2601 (Reissue 2016).

Neb. Rev. Stat. § 30-2630(2) (Reissue 2016) provides for the appointment of a conservator. It provides that the appointment of a conservator may be made in relation to the estate and property affairs of a person if the court is satisfied by clear and convincing evidence that the person (1) is unable to manage his or her property and (2) has property which will be wasted or dissipated unless proper management is provided, or if it is necessary or desirable to obtain funds for the support of the person.

In the present case, Anthony's written objection to the petition was broad, challenging the appointment of a guardian and conservator. But at trial, Anthony limited her challenge to the identity of the guardian, asserting during opening statements that the evidence would show that Anthony was best suited to be Dorothy's guardian. Upon our review of the record, we conclude that the county court's decision that Dorothy was in need of a guardian and conservator is supported by competent evidence.

The undisputed medical evidence proves that Dorothy was incapacitated as a result of mental deficiency. Dr. Gloor supported Pfingsten and Randall's request for guardianship. Dr. Zlomke concluded that Dorothy had diminished capacity to care for her personal safety and attend

to her basic necessities, and she lacked sufficient complex executive functioning capacities to make reasoned informed major decisions. Similarly, Dr. Arias determined that Dorothy did not possess the full mental capacity to independently make, communicate, and carry out responsible decisions regarding her person and property, and he therefore recommended appointing a permanent guardian and conservator. And the county court found that a guardianship was the least restrictive alternative given the significant discord among the family members and the accompanying need for judicial oversight.

Similarly, the evidence supported the need for a conservator. The medical experts opined that Dorothy was unable to manage her property, and the evidence established that there were concerns regarding Anthony's potential waste or dissipation of Dorothy's assets by making questionable purchases such as expensive vitamins and supplements and an oxygen concentrator. As a result, we find that the county court did not err in finding that Dorothy was in need of a permanent guardian and conservator.

*Identity of Guardian and Conservator.*

Anthony next contends that the county court erred in appointing Pfingsten and Randall as coguardians and Pinnacle Bank as conservator rather than appointing Anthony guardian and conservator. She claims that as Dorothy's attorney-in-fact, she had priority for appointment, and the court erred in passing her over. We find no merit to this argument.

Neb. Rev. Stat. § 30-2627 (Reissue 2016) sets forth the requisites for who may serve as guardian for an incapacitated person. Relevant here, any competent person may be appointed guardian of a person alleged to be incapacitated. § 30-2627(a). Section 30-2627(b) sets forth the priority for appointment of persons who are not disqualified and exhibit the ability to exercise the powers to be assigned by the court. A person nominated in a power of attorney or acting under a power of attorney has first priority for appointment as guardian, and an adult child of the incapacitated person has third priority. § 30-2627(b). However, if it is in the best interest of the protected person, a court may pass over a person having priority and appoint a person having lower or no priority. § 30-2627(c); *In re Guardianship & Conservatorship of Mueller*, 23 Neb. App. 430, 872 N.W.2d 906 (2015). With respect to persons having equal priority, the court shall select the person it deems best qualified to serve. § 30-2627(c).

In the instant case, the county court recognized Anthony's priority to be appointed Dorothy's guardian but also observed its authority to appoint a person of lesser or no priority if it was in Dorothy's best interest to do so. The court weighed the strengths and weaknesses of Anthony versus Pfingsten and Randall, noting Anthony's skepticism of the medical profession and Dr. Gloor's opinions as well as her hostility to Pinnacle Bank and the trust officer, her evasive trial testimony, resistance to judicial oversight, and ambivalence about compliance with court orders. On the other hand, the court noted that Pfingsten and Randall readily submitted to the court's jurisdiction and generally agreed with the advice of Dorothy's medical providers and indicated that they would follow the opinions and recommendations of the medical professionals. Ultimately, the court determined that Dorothy's best interests would be served by appointing Pfingsten and Randall as coguardians. That decision is supported by the competent evidence, and we therefore cannot find that it was in error.

Anthony likewise argues that she should have been appointed conservator instead of Pinnacle Bank. Relevant here, a person nominated in a power of attorney or acting under a power of attorney has first priority for appointment as conservator. Neb. Rev. Stat. § 30-2639(b)(1) (Reissue 2008). If it is in the best interest of the protected person, a court may pass over a person having priority and appoint a person having lower or no priority. § 30-2639(c).

Here, Pinnacle Bank was already serving as cotrustee of Dorothy's family trust, and the trust officer was familiar with Dorothy, Pfingsten, and Randall. The bank was willing to serve as permanent conservator for Dorothy, and Pfingsten and Randall requested that the bank be so appointed. At trial, Anthony testified that she was not seeking to be appointed conservator, but rather, it was her position that Dorothy did not need a conservator. Finding that Dorothy was in need of a conservator, the county court also recognized that neither Pfingsten, Randall, nor Anthony requested to be appointed. And the court expressed concern over two provisions in the power of attorney document which assigned Dorothy's power as cotrustee of the family trust to Anthony and authorized Anthony to transfer any real estate or person property owned by Dorothy to herself. Thus, the court determined that appointing a neutral third party was ideal because of the conflict among the family members. The record therefore supports the court's decision to appoint Pinnacle Bank as Dorothy's conservator.

*Attorney Fees.*

Anthony argues that the county court erred in ordering the attorney fees incurred by Pfingsten and Randall to be paid by Dorothy's estate. We find no merit to this argument.

When a court determines that a guardianship or conservatorship appointment is necessary for a person alleged to be in need of protection, the reasonable costs of initiating a good faith petition, including attorney fees, constitute necessary expenditures for the person's support or benefit, which costs may be assessed against the person's estate. *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

Anthony admits that she does not challenge the number of hours counsel devoted to the case or his hourly rate. Rather, she argues that the proceedings were unnecessary, they were taken against Dorothy's wishes, and the pleadings were materially inaccurate. Thus, she opines that charging the attorney fees to Dorothy's estate was in error. Because we have concluded that the county court did not err in finding that Dorothy was incapacitated and in need of a guardian and conservator, we find no merit to Anthony's argument with respect to the attorney fees incurred by counsel for Pfingsten and Randall in initiating this matter.

*Letters of Appointment.*

Finally, Anthony argues that the county court erred in issuing letters to the appointees belatedly absent some showing of justification in response to its order to show cause. We find this issue has not been preserved for appeal.

Although not contained in our record, the county court apparently issued an order to show cause dated June 24, 2016 with respect to the status of fulfilling the requirements for finalizing the appointment of the guardians and conservator. At a hearing on July 19, which the court referred to as a "status hearing," counsel for Pfingsten and Randall indicated that the appointees had completed the necessary training and filed the certificates with the court, but he requested an

additional 30 days in order to complete the required paperwork. Anthony did not object, and the court granted the extension. The required paperwork was subsequently filed, and the county court issued the letters of guardianship and conservatorship in October 2016.

The failure to make a timely objection waives the right to assert prejudicial error on appeal. *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). Because Anthony did not object to granting an extension in order to allow the guardians and conservator to complete the required paperwork, she has failed to preserve this issue for appeal.

## CONCLUSION

We conclude that the order from which the appeal was taken was a final appealable order, and thus, this court has jurisdiction over this case. In addition, the county court did not err in determining that Dorothy was in need of a guardian and conservator and appointing Pfingsten and Randall as coguardians and Pinnacle Bank as conservator. Finally, we find that allowing attorney fees for the petitioners' counsel to be paid by Dorothy's estate was not an abuse of discretion. Accordingly, we affirm the order of the county court.

AFFIRMED.