

FILED

May 29 2019, 11:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of R.L. (Minor Child) | May 29, 2019 |
| and | Court of Appeals Case No. 18A-JC-2927 |
| J. R. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Marilyn Moores, Judge |
| Indiana Department of Child Services, | The Honorable Gael Deppert, Magistrate |
| *Appellee-Petitioner,* | Trial Court Cause No. 49D09-1803-JC-638 |
| and | |
| Child Advocates, Inc., | |
| *Guardian Ad Litem.* | |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, J.R. (Mother), appeals the juvenile court's denial of her motion to dismiss the petition of Appellees'-Petitioners', Department of Child Services (DCS) and Child Advocates, Inc., (collectively, DCS), alleging that her minor child, R.N.L. (Child), is a child in need of services (CHINS).

We reverse and remand for further proceedings.

# ISSUE

Mother presents one issue on appeal: Whether the juvenile court erred in denying her motion to dismiss the instant CHINS case.

# FACTS AND PROCEDURAL HISTORY

Mother and R.L. (Father)[1] are the parents of a daughter, J.L., born early in 2017. Shortly after J.L.'s birth, Mother became pregnant with Child. Father is also father to Child. On a date which is unclear from the record, J.L. was removed from the care of Mother and Father in 2017 when DCS initiated a CHINS proceeding based on allegations of neglect (the J.L. CHINS). Child was born on November 2, 2017.

On November 7, 2017, DCS filed a petition alleging that Child was a CHINS (the 2017 CHINS) based on allegations that, among other things, Mother and

---

[1] Father is not a party in the instant appeal.

Father had failed to provide a safe home, had not completed services referred in the still-ongoing J.L. CHINS proceeding to rectify conditions for removal, Mother was unable and unwilling to care for Child, Mother struggled with anger issues, service providers had not recommended unsupervised parenting time, and Father had not demonstrated the ability to safeguard Child while Child was in Mother's care. Child was removed from Mother and Father's care and placed with the same foster family caring for J.L. On January 26, 2018, the juvenile court held a fact-finding hearing on the 2017 CHINS. On March 2, 2018, the juvenile court denied the 2017 CHINS, finding that DCS had made no referrals for Mother in the 2017 CHINS, DCS had failed to establish the foundation for evidence of any prior referrals in other CHINS proceedings involving Mother, and that Mother had a stable home, knew about community resources available to her, and had strengthened her parenting skills. The juvenile court dismissed the 2017 CHINS.

[6] The juvenile court's order denying and dismissing the 2017 CHINS was entered and served on the parties at 8:33 a.m. on March 2, 2018. It is unclear from the record before us whether that order was the subject of an administrative hearing with the parties present. Without informing Mother that the 2017 CHINS had been denied and dismissed, sometime prior to 2:00 p.m. on March 2, 2018, the family case manager for Child, Britney Whittaker (FCM Whittaker), contacted Mother by telephone and asked to inspect Mother's residence. FCM Whittaker also acted as case manager for the J.L. CHINS. Mother denied FCM

Whittaker's request to inspect the residence and admitted that the home was not safe for a baby due to having condition issues.

[7] On March 2, 2018, at 2:00 p.m., FCM Whittaker "detained" Child, even though Child had never left the physical custody of his foster family after the juvenile court denied the 2017 CHINS. (Appellant's App. Vol. II, p. 50). After being detained on March 2, 2018, Child remained in the custody of his foster family. On March 6, 2018, FCM Whittaker filed a report of preliminary inquiry and investigation (the 2018 Preliminary Inquiry) in which she stated that on

> 3/2/2018, FCM Whittaker contacted [Mother] in order to complete a home visit and assess the living conditions. [Mother] stated that her apartment had dry wall issues, water leaking, and that she was waiting to be switched to another apartment until [sic] but did not know when this would occur. [Mother] stated her home was not safe for a baby. [Mother] refused to allow FCM Whittaker to come to the home.

(Appellant's App. Vol. II, p. 52). In the 2018 Preliminary Inquiry, FCM Whittaker also provided a history of the course of proceedings in both the J.L. CHINS proceedings and the 2017 CHINS, made averments concerning Mother's alleged lack of progress in services referred in those matters as well as Mother's poor parenting skills, Mother's mental health diagnoses which she was allegedly not addressing, and unaddressed domestic violence between Mother and Father. The preliminary inquiry also contained the March 4, 2018, report of Mother's home-based therapist stating that Mother had refused to

purchase more formula on February 8, 2018, for a supervised visit because she felt that she should not be required to provide for Child if Child was not in her care. The home-based therapist also related that Mother had been threatened with eviction in February 2018. According to the therapist, Mother later reported that she would not be evicted if she paid a late fee with her March 2018 rent. It was unclear to the home-based therapist whether Mother had made those payments. Mother had also reported on February 28, 2018, that the bathroom ceiling had caved in earlier in the month and had not been fixed; that she had not cleaned up the mess; that the apartment was not safe; and that she wanted to move.

[8] On March 6, 2018, the juvenile court found that probable cause existed that Child was a CHINS and authorized the filing of a second CHINS petition (the 2018 CHINS). The 2018 CHINS petition contained allegations that Mother had failed to provide Child with safe and stable housing, struggled with diagnosed but unaddressed mental health issues that hindered her ability to care for Child, had not completed services in the J.L. CHINS proceeding, lacked basic parenting skills such as preparing formula and changing diapers, experienced domestic violence, no service provider had recommended unsupervised parenting time, and other allegations pertaining to Father. DCS also alleged that Mother reported to FCM Whittaker on March 2, 2018, that her home was not suitable for a baby due to condition issues and that Mother had refused to allow an inspection of the home.

[9]     On March 13, 2018, Mother moved the juvenile court to dismiss the 2018 CHINS on the grounds of *res judicata*, arguing that all of the matters alleged in the petition had already been litigated and decided against DCS in the 2017 CHINS. Mother further argued that on March 1, 2018, after the 2017 CHINS had been dismissed by the juvenile court, FCM Whittaker improperly withheld Child from her custody and that FCM Whittaker had no legal authority to complete a home visit or assess living conditions in her home on that day. On March 16, 2018, the juvenile court denied Mother's motion to dismiss, noting in its written order that service of the order denying the 2017 CHINS occurred on March 2, 2018, around 8:33 a.m.

[10]    On May 1, 2018, and August 24, 2018, the juvenile court held fact-finding hearings on the 2018 CHINS petition. At these hearings, Mother's counsel objected to the admission of evidence regarding matters that preceded the filing of the 2018 CHINS based on the same arguments presented in Mother's motion to dismiss. On October 12, 2018, the juvenile court granted the 2018 CHINS petition. Regarding the procedural history of the case, the juvenile court found, in relevant part, as follows:

> 10. On 3/2/18, DCS [FCM Whittaker] contacted Mother regarding the return of the minor child to her care, pursuant to administrative ruling issued 3/2/18 regarding [the court's] order finding minor child, above, was not a child in need of services.

(Appellant's App. Vol. II, p. 174). The juvenile court found that Mother had been referred to services to work on many issues including parenting skills,

domestic violence, budgeting, and housing, but had been inconsistent and insufficiently engaged; Mother completed a psychological evaluation in 2017 which resulted in diagnoses including not-specified schizophrenia with symptoms of psychosis and PTSD which she was not treating adequately and which impaired her ability to parent; home-based therapy over the span of a year had not benefitted Mother, who persisted in her inability to understand and meet Child's needs; and that Mother's relationship with Father was plagued with domestic violence and had been through the life of the case.

[11] Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[12] Mother contends that her procedural due process rights were violated when the juvenile court "allowed DCS to proceed with a CHINS action that [Mother] had already faced and been vindicated on." (Appellant's Br. p. 6). However, Mother did not raise this constitutional challenge in her written motion to dismiss or during argument on her motion. Even arguments based on constitutional challenges are waived if raised for the first time on appeal. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). We conclude that Mother waived her procedural due process claim.

[13] Even though she waived her constitutional claim, the gravamen of Mother's argument is that, pursuant to the doctrine of *res judicata*, the juvenile court

should have dismissed the 2018 CHINS. Mother raised and preserved this issue. Although she did not frame it as such, such motions are properly made pursuant to Trial Rule 12(B)(6). *See*, *e.g.*, *Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018) (affirming the dismissal of a complaint on the basis of *res judicata* where defendant moved for dismissal pursuant to Indiana Trial Rule 12(B)(6)). If a party asserting a 12(B)(6) defense presents matters outside the pleadings which are not excluded by the trial court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Ind. Trial Rule 12(B). Here, Mother incorporated into her dismissal motion the juvenile court's order denying the 2017 CHINS and the 2018 CHINS Preliminary Inquiry, and therefore we will treat her motion as having been one for summary judgment. *Id*. Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review both the grant or denial of summary judgment *de novo* and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Id*.

## II. *Res Judicata*

[14] "*Res judicata* serves to prevent repetitious litigation of disputes that are essentially the same." *Earl v. State Farm Mut. Auto. Ins. Co.*, 91 N.E.3d 1066, 1074 n. 5 (Ind. Ct. App. 2018), *trans. denied*. The doctrine of *res judicata*

encompasses the principles of issue preclusion and claim preclusion. *Freels*, 94 N.E.3d at 342. Mother argues that claim preclusion barred the 2018 CHINS. Claim preclusion applies when a final judgment on the merits has been entered and acts as a complete bar to subsequent litigation on the same claim between identical parties. *M.G. v. V.P.*, 74 N.E.3d 259, 264 (Ind. Ct. App. 2017).

> When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies.

*Id.* (quotation omitted). DCS does not dispute that the juvenile court had proper jurisdiction over the 2017 CHINS, the 2017 CHINS was rendered on the merits, or that the identity of the parties in both proceedings was the same. Rather, DCS contends that *res judicata* did not bar the 2018 CHINS because "the matter at issue here was not, or could not have been, previously litigated."[2] (Appellants' Br. p. 13).

[15] Our examination of the matters contained in the 2017 CHINS petition, the juvenile court's order denying the 2017 CHINS, the 2018 Preliminary Inquiry,

---

[2] DCS notes that the juvenile court did not specify in its order denying the 2017 CHINS "whether the dismissal was with or without prejudice." (Appellees' Br. p. 6). Unless a trial court specifies otherwise, a dismissal is with prejudice. Trial Rule 41(B).

and the 2018 CHINS petition leads us to conclude that a number of the issues litigated by DCS in the 2018 CHINS were, or could have been, litigated in the 2017 CHINS.[3]  Indeed, the allegation that Mother was currently involved in the J.L. CHINS and the allegation that services had not been completed in that case contained in the 2017 CHINS were simply duplicated in the 2018 CHINS.

[16]  Other matters alleged in the 2018 CHINS could have been determined in 2017 CHINS proceeding but were not.  For example, Mother completed a psychological evaluation in February of 2017 and was diagnosed with schizophrenia with symptoms of psychosis and PTSD, among other conditions.  Despite these diagnoses being known, DCS made no allegations in the 2017 CHINS petition, filed on November 7, 2017, based specifically on Mother's psychological evaluation or her failure to follow any concomitant care recommendations.  Likewise, the juvenile court's order denying the 2017 CHINS made no findings or conclusions specifically based on Mother's mental health diagnoses and treatment plan.  However, in its 2018 CHINS petition, filed four days after the juvenile court entered its order denying the previous petition, DCS alleged that "Mother completed a psychological evaluation but has not followed through with her mental health treatment, and she admitted not taking her medication." (Appellant's App. Vol. II, pp. 72-73).  There is nothing in the record to indicate that this allegation was based on new

---

[3] The chronological case summary and transcript of the 2017 CHINS fact-findings hearings are not part of the record on appeal.

information that was not known to DCS at the time it filed the 2017 CHINS. DCS argues that evidence at the August 2018 fact-finding hearing on the 2018 CHINS indicated that Mother had not seen her therapist since May 2018, had not seen her doctor since June 2018, and that Mother was not taking her medication. However, this information was not before the juvenile court at the time that it decided Mother's dismissal motion, as there was nothing in the 2018 Preliminary Inquiry which supported these allegations.

[17] An examination of the litigation of the issue of Mother's ability and willingness to parent yields a similar result. The 2017 CHINS petition alleged that Mother "has not successfully demonstrated an ability and willingness to appropriately care for [Child][.]" (Appellant's App. Vol. II, p. 38). After fact-finding had occurred, the juvenile court concluded in denying the 2017 CHINS that it was "uncontroverted that Mother has a stable home, that she knows of local community-based resources that are easily accessible to her, and that [M]other's parenting skills have improved." Yet, four days after the entry of this finding, DCS alleged in the 2018 CHINS that, "[d]espite the therapist involved teaching parenting skills for a year, [Mother] still struggles with basic care of infants, which includes not knowing how much formula to feed them and not being willing to change their diapers." (Appellant's App. Vol. II, p. 73). Again, although the 2018 Preliminary Inquiry contained a report by the home-based therapist dated March 4, 2018, to this effect, there is nothing in that report that indicates that these were conditions which had changed since the filing of the 2017 CHINS or even the last fact-finding in that matter.

[18]     Similarly, the 2018 CHINS alleged that Mother and Father "have a very aggressive relationship, and [Mother] has reported in the past that [Father] hit her." (Appellant's App. Vol. II, p. 73). This was an issue which was known to DCS at the time of the filing of the 2017 CHINS, could have been litigated in those proceedings, but apparently was not, as the trial court made no findings in its denial order regarding the issue. There is nothing in the record before us indicating that any new acts of domestic violence had occurred between Mother and Father that were unknown to DCS at the time of the 2017 CHINS litigation or that had occurred since the last fact-finding hearing in that matter on January 26, 2018.

[19]     The issues of Mother's compliance with services in J.L.'s CHINS, her mental health, her parenting abilities, and domestic violence were either already litigated or were known to DCS at the time that it filed and litigated its 2017 CHINS, and thus, re-litigation of those issues was barred by *res judicata*. *See M.G.*, 74 N.E.3d at 264. In reaching our conclusion, we are cognizant of the fact that circumstances change as CHINS proceedings unfold and that the purpose of the CHINS statute is to protect children. We do not intend to downplay the seriousness of the allegations contained in the 2018 CHINS. However, parents have a right to be free of vexatious and repetitious litigation, and we are concerned with the manner in which DCS litigated this case.

[20]     In its order granting the 2018 CHINS, the juvenile court made findings regarding issues which we have determined should have been dismissed. For example, the juvenile court entered at least ten findings regarding the results of

Mother's mental health evaluation based on information known to DCS at the time it filed its 2017 CHINS, and it found the domestic violence between Mother and Father to have occurred "'through the lifespan of this case.'" (Appellant's App. Vol. II, p. 180) (quote not attributed in the original). However, in the 2018 CHINS, DCS did allege a new circumstance supporting its allegation that Mother had failed to supply Child with a safe and stable home based upon Mother's report to FCM Whittaker on March 2, 2018, that her home was unfit for a baby. Mother argues that, because the juvenile court had already denied the 2017 CHINS when FCM Whittaker requested a home visit and no report of abuse or neglect had been initiated by an outside party, FCM Whittaker had no authority to investigate Mother. Although we are troubled by the timing of FCM Whittaker's call to Mother and subsequent detention of Child, FCM Whittaker was still acting as case manager in the J.L. CHINS at the time she made her request to Mother.[4] Contrary to Mother's assertions, nothing in the CHINS statute requires that a so-called "310" report, which is a third-party report of abuse or neglect of a child, is necessary to remove a child. Indeed, a caseworker is authorized to take a child into custody if the caseworker has probable cause to believe the child is a CHINS, without reference to a third-party report. *See* I.C. § 31-34-2-3.

---

[4] We find no support in the record for the juvenile court's conclusion in its order granting the 2018 CHINS that FCM Whittaker "contacted Mother regarding the return of the minor child to her care, pursuant to [the] administrative ruling issued 3/2/18 regarding [the court's] order finding minor child, above, was not a child in need of services." (Appellant's App. Vol. II, p. 174).

There was also information in the 2018 Preliminary Inquiry regarding Mother failing to provide formula for Child on February 8, 2018, and reports taken on February 26 and 28, 2018, regarding Mother's housing instability which supported DCS's allegations in its 2018 CHINS petition that Mother had not provided a stable, safe home and still struggled with basic infant care. Inasmuch as these facts occurred after the last fact-finding hearing in the 2017 CHINS, they could not have been litigated in the prior proceeding. Therefore, we remand with instructions to the juvenile court to reconsider the 2018 CHINS as to Mother without reliance on issues that were already litigated or could have been litigated at the time of the 2017 CHINS.

## CONCLUSION

Based on the foregoing, we conclude that the juvenile court erred when it failed to dismiss those claims made by DCS in its 2018 CHINS petition which had already been litigated or which could have been litigated in the 2017 CHINS.

Reversed and remanded for proceedings consistent with this opinion.

Bailey, J. and Pyle, J. concur