



FILED

May 05 2020, 2:11 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-JC-296

## In the Matter of R.L. (Minor Child); J.R. (Mother),

*Appellant,*

–v–

## Indiana Department of Child Services and Child Advocates, Inc.,

*Appellees.*

Argued: February 20, 2020 | Decided: May 5, 2020

Appeal from the Marion Superior Court, Juvenile Division
No. 49D09-1803-JC-638
The Honorable Marilyn Moores, Judge
The Honorable Gael Deppert, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-JC-2927

**Opinion by Justice David**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**David, Justice.**

Last year, our Court handed down *Matter of Eq.W.*, 124 N.E.3d 1201 (Ind. 2019), a case in which we determined that the doctrine of claim preclusion applies to child in need of services (CHINS) proceedings. Without the benefit of that opinion, the parties in this case argued over whether the Department of Child Services (DCS) could file a subsequent CHINS petition alleging R.L. was a child in need of services after an initial petition was dismissed with prejudice. Although the second case proceeded and R.L. was found to be a CHINS, the Court of Appeals reversed, holding DCS was barred from relitigating this matter. After *Matter of Eq.W.* was handed down, however, the State successfully petitioned for rehearing and the Court of Appeals reversed course, ultimately affirming the juvenile court's CHINS finding.

Mother sought transfer, arguing that DCS should have been barred from filing a successive CHINS action after the first petition was dismissed with prejudice. Applying *Matter of Eq.W.* to the circumstances of this case, we agree with Mother and find that the subsequent CHINS petition should have been barred. We therefore reverse the juvenile court and dismiss the present CHINS petition with prejudice.

# Facts and Procedural History

R.L. was born on November 2, 2017, to J.R. (Mother) and R.L. (Father). Shortly after his birth, DCS removed R.L. from his parents' care. On November 6, 2017, DCS filed a petition alleging R.L. was a child in need of services pursuant to Indiana Code section 31-34-1-1. The petition alleged the following facts:

- R.L.'s parents failed to provide him with a safe, stable, and appropriate living environment;
- The parents were involved in a separate CHINS case regarding another child;
- Services in the other case had not been successfully completed to remedy the reasons for DCS's involvement;

- Mother was found unsupervised with the other child despite a court order prohibiting such conduct;
- Mother struggled with anger issues and had not successfully demonstrated an ability and willingness to appropriately care for R.L.; and
- Father discontinued parenting time with the other child and had not shown an ability to care for R.L.'s safety and wellbeing.

An initial hearing on the petition took place on November 7, 2017, and a factfinding hearing took place on January 26, 2018.

On March 1, 2018, the juvenile court determined R.L. was not a child in need of services. Among other things, the court found DCS made no service referrals for Mother related to R.L., DCS failed to establish an adequate foundation for relevant testimony and evidence, and it was uncontroverted that Mother had a stable home and was aware of local community resources for her family. Because the manner of dismissal was unspecified, the action was dismissed with prejudice. *See* Ind. Trial Rule 41(B).

On March 2, 2018—the day after the first petition was dismissed—DCS contacted Mother to complete a home visit and assess the condition of her home. Between the dismissal of the first petition and the home visit request, R.L. remained in foster care due to ongoing safety concerns with Mother's home. Although the family case manager (FCM) was aware the CHINS petition had been dismissed, the FCM did not share this information with Mother or indicate that R.L. could have been returned to her care. Mother told the FCM that her home was not in a safe condition because of a mold issue and that she was waiting to be switched to a different apartment. Mother also refused to allow the FCM to inspect her home.

On March 6, 2018, DCS filed a subsequent petition alleging R.L. was a CHINS. The subsequent petition was based on the following alleged facts:

- Mother and Father failed to provide R.L. with a safe, stable, and appropriate living environment;

- Mother continued to struggle with mental health issues that interfered with her ability to care for R.L.;
- Though Mother completed a mental health evaluation, she was not taking her prescribed medication or following through with treatment;
- Mother was currently involved in a DCS case with her other child and services had not been successfully completed in that case;
- Mother still struggled with basic care for infants including using proper amounts of formula and demonstrating a lack of willingness to change diapers;
- Mother and Father's personal relationship remained aggressive; and
- Mother reported her home was unsafe and refused to allow the FCM to enter.

Mother moved to dismiss the petition on claim preclusion grounds and renewed her motion at a March 16, 2018, pretrial hearing. The juvenile court denied Mother's motion and ultimately found R.L. was a child in need of services. Mother appealed.

In a unanimous opinion, the Court of Appeals reversed. *Matter of R.L.*, 126 N.E.3d 864, 871 (Ind. Ct. App. 2019), *modified on reh'g*. The court found the second petition was barred by res judicata and should have been dismissed because "a number of the issues litigated by DCS in the 2018 CHINS were, or could have been, litigated in the 2017 CHINS." *Id*. at 869. More specifically, "Mother's compliance with services in [the other child's] CHINS, her mental health, her parenting abilities, and domestic violence" were all issues that were already litigated or otherwise known to DCS during the first CHINS proceeding. *Id*. at 870. However, because there were new allegations—namely that Mother failed to provide formula during a February 2018 visit, had failed to provide a safe home environment, and struggled with basic infant care—the court remanded the matter to the juvenile court to reconsider the second CHINS petition "without reliance on issues that were already litigated or could have been litigated at the time of the 2017 CHINS." *Id*. at 871.

After the Court of Appeals issued its opinion, our Court handed down *Matter of Eq.W.*, 124 N.E.3d at 1201, which prompted the State to file a petition for rehearing. *Matter of R.L.*, 133 N.E.3d 173, 174 (Ind. Ct. App. 2019), *on reh'g*. On rehearing, the Court of Appeals concluded, "*Eq.W.* has now clarified that DCS may rely on evidence of a parent's prior conduct in bringing a subsequent CHINS, and, therefore, contrary to this court's decision, the trial court must be able to rely on that evidence in rendering its determination." *Id*. at 175. Opining that *Eq.W.*'s holding empowered DCS to file the subsequent CHINS petition, the Court of Appeals affirmed the trial court in all respects. *Id*. at 176.

Mother sought transfer, which we now grant, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

When we review a CHINS adjudication, we neither reweigh evidence nor judge witness credibility. *In re D.J.*, 68 N.E.3d 574, 577-78 (Ind. 2017). We reverse a CHINS finding only if the decision was clearly erroneous. *Id*. at 578. "A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts." *Id*. (internal quotation omitted).

## Discussion and Decision

On transfer, Mother argues that the trial court should have granted her motion to dismiss the second petition because it was barred by claim preclusion. More specifically, Mother urges this Court to find that the matters alleged in the second petition were or could have been litigated in the first petition and any new allegations of fact in the second petition were not material. DCS argues the opposite, believing that claim preclusion is inapplicable in this case because the subsequent petition introduced new allegations of material fact such that, when combined with Mother's previous acts, the petition would survive a motion to dismiss.

Both sides attempt to use our recent decision in *Matter of Eq.W.* as sword and shield. *Matter of Eq.W.* stands for the proposition that when DCS attempts to bite the proverbial apple, it must do so with intentionality and cannot engage in piecemeal litigation to get subsequent bites at the same apple. In other words, DCS must have its house in order when it institutes a CHINS proceeding or else it risks dismissal that will bar future actions. In our view, DCS has attempted to take the prohibited second bite in this case after it largely failed to make its case during the first CHINS filing. For this reason—and those expressed below—we agree with Mother that the second CHINS petition pertaining to R.L. should have been barred by the doctrine of claim preclusion.

## I.

Our decision in *Eq.W.* held that claim preclusion applies to CHINS proceedings. 124 N.E.3d at 1211. The opinion laid out the four essential elements of claim preclusion:

> (1) The former judgment must have been rendered by a court of competent jurisdiction;
> (2) The former judgment must have been rendered on the merits;
> (3) The matter now in issue was or might have been determined in the former suit; and
> (4) The controversy adjudicated in the former suit must have been between the parties to the present action or their privies.

*Id*. at 1209 (quoting *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014)). Focusing on element (3), our opinion noted "application of res judicata in a CHINS proceeding is [not] without limits." *Id*. at 1212. That is, "DCS must necessarily rely on the past actions of parents to give a trial court the full story of why a CHINS petition was filed in the first place." *Id*. So, as a corollary of element (3), our Court found any subsequent CHINS petition "must include new allegations of material fact separate from what was available to DCS to use at the original fact-finding

hearing" that "took place in time after the relevant CHINS petition was dismissed." *Id*.

Our observations in *Eq.W.* are in step with several of our sister courts across the nation. For example, in *People ex rel. L.S.*, 721 N.W.2d 83 (S.D. 2006), the South Dakota Supreme Court considered the doctrine of res judicata through the lens of a child welfare proceeding. There, the court observed, "when it comes to protecting children res judicata should be cautiously applied." *Id*. at 90. This was because "[t]he protection of children from continuing abuse and neglect is not the type of needless litigation contemplated by the doctrine [of res judicata]." *Id*. at 90. *See also In re Juvenile Appeal (83-DE)*, 460 A.2d 1277, 1282 (Ct. 1983) (observing claim preclusion "should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies"); *Interest of J.J.T and T.J.T.*, 877 P.2d 161, 163 (Utah Ct. App. 1994) (sharing concerns that "a hyper-technical application of res judicata is improper in adjudications where the welfare of children is at stake" because "the child's environment is constantly evolving"). In allowing the State to present evidence of changed circumstances, the South Dakota court concluded flexibility was needed in these cases because "[t]o hold otherwise is to turn our legal process for protecting abused and neglected children into a hollow ritual." *People ex rel. L.S.*, 721 N.W.2d at 92.

More recently, the Nebraska Supreme Court held that "the doctrine of claim preclusion should not be strictly applied in abuse and neglect cases when doing so would fail to protect children from continuing abuse or neglect." *In re Interest of Noah B.*, 891 N.W.2d 109, 124 (Neb. 2017). The court cautioned, however, that "the State does not have unfettered authority to adjudicate abuse and neglect allegations in a piecemeal fashion, free from the constraints of claim preclusion." *Id*. To that end— and consistent with our holding in *Matter of Eq.W.*—the State must rely on evidence "from the time period after the prior adjudication to prove the allegations of the supplemental petition" so as to escape the preclusive effect of res judicata. *Id*. at 124-25. This conclusion sounds in the basic premise that "the doctrine of claim preclusion cannot settle a question of a

child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time." *Id*. at 122 (cleaned up) (quotation omitted).

So in sum, the basic framework of *Eq.W.* straddled the divide between finality in a court's determination and the flexibility demanded by the evolving nature of CHINS cases. As was the case in *Matter of Eq.W.* and many of the aforementioned cases from other states, the battleground often concerns the third element of claim preclusion: whether the matter now in issue was or might have been determined in the former suit. While DCS must introduce new allegations of material fact in a subsequent petition, *Eq.W.* also cautioned courts against turning a blind eye to piecemeal litigation and/or actions that undermine the confidence we must place in our State's child welfare system. Here, we take issue with both.

## II.

Recall that *Matter of Eq.W.* observed, "DCS must necessarily rely on the past actions of parents to give a trial court the full story of why a CHINS petition was filed in the first place." 124 N.E.3d at 1212. There, we agreed with DCS's argument that "past acts by parents can be relevant to new CHINS filings involving the same parents and children." *Id*. at 1211. However, our opinion also warned that repeated filings are "ripe for potential abuse" and we declined to "endorse the procedural tactics employed in [*Eq.W.*] to essentially string out the CHINS proceeding until enough evidence was collected, all the while keeping the children separated from their parents." *Id*.; *see also In re Interest of Noah B.*, 891 N.W.2d at 124. In our view, the record in this case demonstrates the type of piecemeal litigation that *Eq.W.* sought to prevent.

First, the second petition largely duplicated allegations or relied on matters that could have been determined in the first petition. These included allegations that Mother was currently involved in a separate CHINS action with her other child, that services had not been completed in that case, that Mother failed to follow through with treatment after a psychological evaluation, and that Mother and Father had a tempestuous

relationship. To be sure, these are serious allegations, but DCS failed to carry its burden in the first petition, which ultimately led to dismissal with prejudice.

Second, the circumstances surrounding the second petition are concerning. Although the first petition had been dismissed, Mother either did not know about the dismissal or had no knowledge that R.L. should have been returned to her care. The FCM was involved in both the first and second petitions; she was aware of the first petition's dismissal but made no effort to return the child. Without speculating whether Mother's actions would have been different had she known that her child could have been returned before refusing the FCM's request to inspect her apartment, we are concerned that Mother's refusal became part and parcel of the second filing.

Finally, our underlying rationale in *Matter of Eq.W.* is amplified in this case, especially when it comes to procedural protections for children and parents. "The purpose of a CHINS adjudication is to protect children, not punish parents." *In re K.D.*, 962 N.E.2d 1249, 1258 (Ind. 2012) (citation omitted). Parents should appropriately be held accountable for the care of their children, but DCS also bears responsibility to move "cautiously and meticulously … through each stage of a CHINS proceeding." *Matter of Eq.W.*, 124 N.E.3d at 1210. The tactics employed by DCS in this case undermine the confidence parents have in Indiana's child welfare system. This practice should not be condoned, especially when DCS has vastly superior resources at its disposal to properly and accurately move through each stage of the CHINS proceeding.

For these reasons, we find that the juvenile court should have granted Mother's motion to dismiss. We therefore reverse the juvenile court and dismiss the present CHINS action with prejudice. *See id.* at 1212 (observing that, "Practically speaking, if the parent or guardian is successful in showing claim preclusion applied to bar a subsequent petition, the CHINS petition must be dismissed").

# Conclusion

*Matter of Eq.W.* sought to prevent the type of piecemeal litigation that occurred in this case. The subsequent petition was largely duplicative of the first and enunciated three new, weakly supported allegations. At least one of those allegations was likely the result of DCS's failure to inform Mother that her child could have been returned to her care—information that could have further informed Mother's actions. If there is to be any predictability for parents, children, and the State in these proceedings, we must hold each party properly accountable to their individual responsibilities. Therefore, Mother's motion to dismiss should have been granted because under the framework of *Eq.W.*, the subsequent petition should have been barred by the doctrine of claim preclusion.

We reverse the trial court and dismiss the present CHINS petition with prejudice.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Suzy St. John
Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cornelius
Abigail Recker
Deputy Attorneys General
Indianapolis, Indiana